Hicks v. Wolford.

No. 23,713.

B. E. HICKS and P. C. IRWIN, *Appellees*, v. J. M. WOLFORD,
*Appellant*.

SYLLABUS BY THE COURT.

ACTION — *Commissions on Sale of Oil Lease* — *Verdict Not Supported by Evidence or Findings*. The verdict of a jury finding that brokers were entitled to a certain commission upon a sale of property is held to be contrary to the evidence and inconsistent with the special findings returned with the verdict.

Appeal from Allen district court; SHELBY C. BROWN, judge *pro tem.* Opinion filed May 6, 1922. Reversed.

*Baxter D. McClain, F. J. Oyler, W. H. Anderson,* and *G. M. Lamer,* all of Iola, for the appellant.

*Frank R. Forrest,* of Iola, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was an action to recover a commission for procuring a purchaser of an oil lease. The plaintiffs prevailed and the defendant appeals.

The plaintiffs alleged in effect that about June 1, 1919, an oral agreement was made between them by which defendant listed his property with the plaintiffs to find a purchaser for oil land which included producing wells and some that were in process of drilling, not yet finished, together with all equipment on the premises, for the price of $37,500. Plaintiffs were to receive 10 per cent commission of the selling price. It was alleged that they found a purchaser in the T-O-Kan Oil & Gas Company, and brought the president, Wannamaker, and representatives of that company and the defendant together, and that an agreement to purchase the property was then made at the price named, $5,000 to be paid in cash and $5,000 every ten days thereafter until the whole price was paid. It was also alleged that there was an oral agreement between Wolford and the oil company to the effect that the representatives of the oil company should have time to confer with the directors of the oil company if they promptly took the matter up for determination, that the company accepted the offer within a reasonable time and notified the defendant of the acceptance. Prior to that time and about June 19 the defendant informed the plaintiffs that he had changed his mind and would not complete the

sale, as a new well had come in and he could sell the property for a larger sum. They therefore prayed judgment for $3,000. The evidence in the case was conflicting as to the terms on which the land was listed and as to whether an agreement between the seller and the purchaser was made and signed at the time of the negotiations. On the part of the plaintiffs the testimony of the representatives of the oil company is that they looked at the property, conferred with the defendant and agreed to buy it, and arranged with him that they would return east and secure the sanction of the purchase and raise the money, and for that purpose they had to have a meeting of the directors of the company, which could only be called on ten days' notice. Irwin states that he drew up an article of agreement which was dictated by the defendant, to the effect that they would take the property at the price named, paying $5,000 in cash and the balance in installments of $5,000 every ten days, and that he typed the agreement which was signed by Wolford and the purchaser, one copy being given to Wannamaker and the other to Wolford. He said he was unable to produce the copy because none was retained by him. It is not claimed that there was any time stated in the agreement for the completion of the sale, nor any understanding between Wolford as to the length of time given for the completion of the contract. He stated, however, that the understanding was that they were to go home and call a board meeting to pass upon the proposition, which would take at least ten days. The board meeting was held on the 24th of June. Wolford orally agreed, he said, with the purchasers to let them have time to call the meeting of the board, ratify the transaction and raise the money, and that the sale was made on these conditions.

On the other hand Wolford said that he never signed a contract of sale, and Wannamaker, who was the active representative of the purchaser, states none was signed by Wolford, that the writing drawn up by Irwin was turned over to him unsigned, and on his request it was signed by the plaintiffs, but not by the defendant. He says that Irwin told him that Wolford would not sign any agreement until the cash payment was made. He further testified that in the early part of July he came here to close up the transaction and learned that the deal had fallen through and that Wolford had sold the property to someone else. The board did decide on June 24 to purchase the property at the price asked by Wolford and in a telegram Wannamaker asked Irwin to try and hold Wolford in line until they were able to come out here, indi-

Hicks v. Wolford.

cating that they did not have a binding agreement with Wolford. Schmidt, one of the plaintiffs' witnesses, corroborated the plaintiffs' claim in part and stated that they talked with Wolford about the time it would take to get a meeting of the directors and arrange for financing the proposition, and he said they were led to believe that it was agreeable to Wolford that they should have that time. On the other hand Wannamaker testified that it was evident during the conference that Wolford would not bind himself unless he received a cash payment, and none was made. He further said that Irwin told him that they, the brokers, would give an option of ten days on the property so that they might have time to submit the proposition to the other members of the board. McMonigle, another witness for the defendant, stated that Wannamaker asked Wolford for an agreement for a ten-days option, but Wolford refused to give such an option. He further testified that Irwin wrote an agreement giving a ten-days option but that Wolford did not sign the agreement, and that he left the office while Irvin was writing it out. The general verdict was in favor of plaintiffs but the amount awarded did not accord with the theory or testimony of either plaintiffs or defendant as the amount was only $962.50. The following special findings were made:

"Q. 1. Did Hicks & Irwin, or either of them, close a contract with the T. O. Kan Oil & Gas Co. for the purchase of the Wolford property? Ans. No.

"Q. 2. If you answer the above in the affirmative, then state the date when such contract was closed. Ans.

"Q. 3. On what date, if at all, was the T. O. Kan Oil & Gas Co. able and ready to purchase the Wolford property? Ans. On or about June 24, 1919.

"Q. 4. On what date was Mr. Wolford notified, if at all, that the T. O. Kan. Oil & Gas Company was ready, able and willing to purchase his property? Ans. Not notified, withdrew his property from the market before June 24, 1919.

"Q. 5. Did the T. O. Kan Oil & Gas Co. enter into negotiations with Hicks & Irwin or with Wolford obligating such company to buy the Wolford property, or finally agreeing to buy same upon the terms offered, and if so, give the date. Ans. Negotiated with Hicks & Irwin, not obligated, finally agreed to purchase the property on June 24, 1919."

As will be seen the general verdict does not accord with the special findings, and further, it is not consistent with the testimony. The evidence of the plaintiffs was that under the listing contract, which was oral, they were to receive ten per cent of the selling price fixed at $37,500, which would have been $3,750. The defendant testified that he was to receive $35,000 net for the property and

plaintiffs were to receive as commission all of the price paid in excess of that amount, which would have been $2,500. The jury, however, appears to have discarded the testimony of both parties, wandered into the realm of speculation and awarded plaintiffs $962.50, an amount not warranted by any of the testimony. There was no basis in the testimony for a quantum meruit award, and no reason for submitting that rule to the jury. There was a marked inconsistency, too, between the special findings and the verdict. Plaintiffs were entitled to the stipulated commission if they found a purchaser for the property on the terms fixed in the oral listing agreement. There was a direct conflict between the parties as to the terms of that agreement. Under either theory it was necessary for plaintiffs to prove that they had produced a purchaser ready and willing to take the property on the terms of the listing agreement, and that the oil company was ready and willing to purchase according to the terms of that agreement. It appears that the representatives of the proposed purchaser were not authorized to make a purchase or agreement of purchase and could not until authority was obtained from the board of directors of the oil company. A writing was drawn up by one of the plaintiffs, stating the terms on which a sale was to be made, but the evidence strongly tends to show that this paper was not signed by the defendant, and the jury has found that a contract for the purchase of the property was not made. In the 5th finding the jury state that while there were negotiations for a purchase, the proposed purchaser had not obligated itself at the negotiations to purchase and did not finally agree to make the purchase until June 24, 1919. That was twenty days after the negotiations were had, and much of the testimony is to the effect that only ten days were given to the oil company in which to decide whether a purchase would be made. Plaintiffs claimed that an agreement of sale was made with the purchaser, but the finding of the jury negatives that claim. Of course, if defendant agreed to give the oil company until the 24th of June to decide upon the purchase, or a reasonable time, and the purchaser was then ready and willing to purchase on the terms of the listing agreement, the defendant would be liable for the agreed commission. On the other hand, if the agreement, as so much of the testimony tends to show, was that only ten days were given to make the purchase, and as it was not made in that time, the defendant was warranted in treating the so-called option as ended and in selling the property to another. There is much

in the evidence tending to show that defendant declined to accept the purchaser or agree to sell until a cash payment was made, and Wannamaker, spokesman for the purchaser, so understood the attitude of the defendant, and that the oil company had not been and would not be accepted as a purchaser by the defendant until a payment of money was made.

The verdict we think is not supported by the testimony, and the findings are inconsistent with the result reached by the jury. The judgment is therefore reversed and the cause remanded with directions to set aside the verdict and grant a new trial.